INGHAM & SON v. CISCO OIL MILL.

Decided April 1, 1905.

**Contract—Acceptance of Offer—Change of Terms.**

Defendant, in answer to an inquiry, wrote plaintiffs offering to feed 400 head of cattle for them at certain stated prices for meal and hulls. Plaintiffs replied, "We will feed from 650 to 700 head with you at prices named." To this defendant answered that owing to a change of conditions it would not undertake to feed the cattle. Held, that as plaintiffs had not accepted the offer as made by defendant no contract was completed prior to defendant's withdrawal of its offer.

Appeal from the District Court of Eastland. Tried below before Hon. J. H. Calhoun.

*J. M. Wagstaff,* for appellants.

*J. J. Butts,* for appellee.—The evidence introduced on the trial of the cause did not show that any contract had been made and entered into by and between the parties. Flomfert v. Hume, 31 S. W. Rep., 679, 680; Summers v. Mills, 21 Texas, 86; Foster v. N. Y. & Texas Land Co., 22 S. W. Rep., 260, 263; Skeeters v. Star Milling Co., 23 S. W. Rep., 1000; O'Neal v. Knippa, 19 S. W. Rep., 1020; Minneapolis & St. P. Ry. Co. v. Rolling Mill, 119 U. S., 149-151, Law Co-Op. Ed. Book, 30, p. 376, 377; First Nat'l Bank v. Hall, 101 U. S., 43-51, Law. Co-Op. Ed. Book, 25, p. 822-825; 9 Cyc. 245, 267-269; Chitty on Contracts, pp. 15, 16; Benjamin on Sales, secs. 39, 40; Jenness v. Miller, 53 Me., 20.

STEPHENS, ASSOCIATE JUSTICE.—In response to an inquiry for prices on feed for four hundred or more steers which appellants desired to fatten for market, appellee made the following proposition:

"Cisco, Texas, August 1, 1901.

Ingham & Son, Midland, Texas,

Dear Sirs: In reply to your favor regarding feed for four hundred cattle, we will sell you hulls at $4 per ton and meal at $17, and will furnish you pens and water. If you desire to feed here let us hear from you soon so that we will know what to do with other applicants.

Yours truly,          Cisco Oil Mill."

The price quoted on meal was satisfactory to appellants, but the price of hulls was objected to for being "too high." Thereupon appellee wrote them again as follows:

"Cisco, Texas, August 7, 1901.

Ingham & Son, Midland, Texas,

Gentlemen: Replying to yours of the 3d, we wish to say that the price quoted you, $4 per ton for hulls and $17 per ton for meal, is the very least that we can do. . . . Awaiting your favorable reply, we are,          Yours respectfully,

Cisco Oil Mill."

To this appellants made the following reply:

Midland, Texas, August 16, 1901.

Gentlemen: Yours of the 7th inst. just received; can not account where it has been. Have been at ranch looking over the stock; will feed from 650 to 700 with you at price named, as it seems the best you'd do, and there will be left 250 that we may put in after first are shipped out. You do not speak of how often you require payment for the meal and hulls, but we should like to pay you at the end of each six weeks.

If necessary to close deal and make contract I can come down, or could you send contract to sign. Of course, when cattle are there, we would expect continuous feed, that is, not to get out of meal and hulls. ·

Have you hulls on hand? What time do you start up, and when would you want the cattle there? We think we would like to commence feeding about November 15.

Respectfully,          Ingham & Son.

P. S. We will ship the steers from here, how is it? Can we unload into the pens or must we drive them?"

Appellee then wrote appellants as follows:

"Cisco, Texas, August 20, 1901.

Ingham & Son, Midland, Texas.

Gentlemen: Yours of the 16th just received, and in reply will say that owing to the present outlook for feed and water, we can not promise for certain to feed your cattle. It has not rained to put water in our tanks this year. I thought when I wrote you that if it would rain by this time and that we could safely feed you out. I write this to let you know how things are so that you can make arrangements to feed elsewhere. However, if we find that we will have feed and water and you will still wish to feed, we will furnish it to you at the prices named.

Our feed pens are about a quarter from the T. & P. stock yards; we usually collect once a month but six weeks will be alright. .

Yours truly,          Cisco Oil Mill,
                    Per P. W. Reynolds."

Appellants finally offered to reduce the number of cattle to four hundred, claiming that appellee had agreed to feed that number at least; but this appellee denied and refused to furnish any feed whatever. The meantime feed had advanced considerably in price, and appellants, being unable to obtain feed for their cattle, brought this suit for damages, which resulted in a judgment against them, the court giving a peremptory instruction.

*Conclusions of Law.*—The construction placed on the correspondence between the parties by the trial court we approve. They did not quite reach an agreement. The offer to sell hulls and meal at a given price and to furnish pens and water for four hundred cattle, which was all the offer appellee ever made, was a different offer from one to sell hulls and meal at said price and furnish pens and water for from

six hundred and fifty to seven hundred cattle, which was all that appellants accepted, or offered to accept, before the offer of appellee was withdrawn. While it is to be inferred from the whole correspondence that appellee would have consented to this modification of its proposition had no change taken place in the conditions existing when the proposition was made, the fact yet remains that it did not consent to the modification, and it matters not that this may have been due alone to such change of conditions as led to a change of mind on the original proposition. Appellants had ample opportunity to close the trade on the very terms proposed by appellee, but lost it by undertaking to add to and thus vary the terms in their letter of acceptance. The opportunity thus given appellee to withdraw its offer it availed itself of, as it had the right to do. The rules on this subject are elementary. Tiedeman on Sales, secs. 33, 34, 36.

For a case very much in point, see Railway v. Rolling Mill, 119 U. S., 149; Law Ed., Book 30, 376.

*Affirmed.*